Filed 10/15/24

**CERTIFIED FOR PARTIAL PUBLICATION***

THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B327483 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA149850) |
| v. | |
| RUSSELL LAJUEAR O'BANNON, Jr., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Roger Ito, Judge. Affirmed.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez and Charles S. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

---

* Pursuant to California Rules of Court, rules 9.76(b) and 976.1, this opinion is certified for publication with the exception of Discussion sections I.B and II.

A jury convicted Russell O'Bannon of crimes arising from his assault on another person with a deadly weapon. The trial court imposed a sentence that included an upper term on one count and a five-year enhancement under Penal Code[1] section 667, subdivision (a)(1). On appeal, O'Bannon contends that his trial counsel provided ineffective assistance by failing to ask the trial court to strike or to dismiss the enhancement under Senate Bill No. 81. That law gives trial courts discretion to strike or to dismiss an enhancement based on consideration of specified mitigating circumstances. In the published portion of this opinion, we address O'Bannon's argument that a mitigating circumstance applied to him because his enhancement is based on a prior conviction more than five years old. O'Bannon measures the age of his prior conviction from the date of the prior conviction to the date he was *sentenced* on the current offense. However, we conclude that a prior conviction's age is properly measured from the date of the prior conviction to the date the defendant *committed* his current offense. In the nonpublished portion of this opinion, we reject his other contention, that the trial court violated Senate Bill No. 567 by improperly imposing the upper term based on aggravating factors not found true by a jury or stipulated to by him. We therefore affirm the judgment.

---

[1] All further undesignated statutory references are to the Penal Code.

## BACKGROUND

This case arises out of O'Bannon's attack on a fellow resident at a Salvation Army home on January 30, 2019. O'Bannon slashed the victim's face with a razor, leaving a scar.

Based on this, a jury convicted O'Bannon of assault with a deadly weapon (§ 245, subd. (a)(1); count 1) and mayhem (§ 203; count 4).[2] As to count 1, the jury found that he personally inflicted great bodily injury (§ 12022.7, subd. (a)) and, as to count 4, the jury found that he personally used a deadly and dangerous weapon (§ 12022, subd. (b)(1)). The trial court then found that O'Bannon had a prior serious felony (§ 667, subd. (a)(1)) and a prior serious or violent felony within the meaning of the Three Strikes law.

At the December 2020 sentencing hearing, the People asked the trial court to dismiss the prior strike and the enhancements based on a directive from the District Attorney. The trial court denied the motion and sentenced O'Bannon on count 4 to the upper term of eight years, doubled to 16 years based on the strike, plus five years for the prior serious felony. The trial court imposed and stayed the sentence on the weapon enhancement and on count 1.

---

[2]   O'Bannon was originally charged with count 1 for assault with a deadly weapon. An amended information added count 2 for aggravated mayhem and count 3 for residential burglary, but count 3 was later dismissed. The information was again amended to replace count 2 with count 4 for ordinary mayhem.

3

On direct appeal, this division remanded for resentencing. (*People v. O'Bannon* (Mar. 23, 2022, B309426) [nonpub. opn.].)[3] On remand, the District Attorney's office amended the information to allege three aggravating circumstances: O'Bannon had prior adult convictions and sustained juvenile petitions that were numerous or of increasing seriousness (Cal. Rules of Court, rule 4.421(b)(2)), he had served a prior prison term (*id.*, rule 4.421(b)(3)), and he previously performed poorly on probation (*id.*, rule 4.421(b)(5)).

At the December 2, 2022 resentencing hearing, defense counsel asked the trial court to strike the five-year enhancement but did not expressly cite Senate Bill No. 81, which gives trial courts discretion to strike or dismiss enhancements based on specified mitigating circumstances. The trial court declined to exercise its discretion to strike the enhancement, citing O'Bannon's "various and sundry criminal violations, which include[ ] extreme acts of violence, in particular, against the victim in this case who will have a lifelong lasting scar. I think it was from his ear down to his mouth. That was extremely severe, extremely disfiguring, and something that subjected that individual to obvious physical and emotional trauma."

As to whether to impose the upper term based on the newly alleged aggravating circumstances, the trial court and prosecutor agreed, without objection from defense counsel, that they did not have to be submitted to a jury. The trial court then reviewed O'Bannon's criminal history as reflected in a 19-page certified rap sheet. Based on it, the trial court found all three aggravating

---

[3] We have taken judicial notice of the record in that matter. (Evid. Code, § 452, subd. (d).)

4

circumstances true beyond a reasonable doubt and reimposed the 21-year prison term, which included the upper term on count 4 and the five-year enhancement.

## DISCUSSION

I.     Senate Bill No. 81

O'Bannon contends that his counsel rendered ineffective assistance by failing to ask that his section 667, subdivision (a), five-year enhancement be stricken or dismissed under Senate Bill No. 81. As we explain, his counsel had no obligation to raise Senate Bill No. 81 because it did not apply to O'Bannon.

A. *General principles*

Section 1385, subdivisions (a) and (b), provide that a trial court may strike or dismiss an enhancement in the furtherance of justice. Effective January 1, 2022, Senate Bill No. 81 (2021–2202 Reg. Sess.) (Stats. 2021, ch. 721) added subdivision (c) to section 1385 as follows: "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety," meaning there is a likelihood that dismissing the enhancement would result in physical injury or serious danger to others. (§ 1385, subd. (c)(2).)

Two mitigating circumstances are relevant here. First, where multiple enhancements are alleged in a single case, all enhancements "beyond a single enhancement shall be dismissed." (§ 1385, subd. (c)(2)(B).) Second, the "enhancement is based on a prior conviction that is over five years old." (§ 1385, subd. (c)(2)(H).)

O'Bannon claims that his trial counsel rendered ineffective assistance by failing to argue that these two mitigating circumstances applied to him. To establish a claim of ineffective assistance of counsel, O'Bannon must show that his counsel's performance fell below an objective standard of reasonableness and prejudice. (See generally *Strickland v. Washington* (1984) 466 U.S. 668, 687–688.) There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. (*People v. Stanley* (2006) 39 Cal.4th 913, 954.) Prejudice occurs where there is a reasonable probability that, but for counsel's unprofessional errors, the defendant would have achieved a more favorable outcome. (*Strickland*, at p. 694; *Stanley*, at p. 954.) A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. (*Strickland*, at p. 694; *Stanley*, at p. 954.)

As we next explain, Senate Bill No. 81 did not apply to O'Bannon. Therefore, O'Bannon cannot establish that his trial counsel either erred in not raising that law below or prejudice.

### B. *Senate Bill No. 81 is not applicable to strike convictions*

O'Bannon first argues that multiple (two) enhancements were alleged in this case, and therefore one had to be dismissed under section 1385, subdivision (c)(2)(B). His argument assumes a prior strike is an "enhancement" under that subdivision.

6

However, as O'Bannon concedes in his reply brief on appeal, the weight of authority is against his position.

The lead case is *People v. Burke* (2023) 89 Cal.App.5th 237 (*Burke*). *Burke*, at page 243, applied usual principles of statutory interpretation to interpret the term "enhancement" in section 1385, subdivision (c). According to the term's established legal or technical meaning, a sentence enhancement is a term of imprisonment added to the base term. (*Burke*, at p. 243.) "It is equally well established that the Three Strikes law is not an enhancement; it is an alternative sentencing scheme for the current offense." (*Ibid.*) Because the "plain language of subdivision (c) of section 1385 applies only to an 'enhancement,' and the Three Strikes law is not an enhancement," section 1385, subdivision (c)'s provisions regarding enhancements do not apply to the Three Strikes law. (*Burke*, at p. 244; accord, *People v. Dain* (2024) 99 Cal.App.5th 399, 410–411, review granted May 29, 2024, S283924; *People v. Olay* (2023) 98 Cal.App.5th 60, 64–69 (*Olay*); cf. *People v. Serrano* (2024) 100 Cal.App.5th 1324, 1336–1338 [§ 1385, subd. (c) inapplicable to premeditation and deliberation findings]; *People v. McDowell* (2024) 99 Cal.App.5th 1147, 1154 [§ 1385, subd. (c) inapplicable to § 236.1, subd. (c)(2)'s alternative penalty provision].)

O'Bannon argues that *Burke*'s analysis is faulty because it fails to address subdivision (c)(2)(G) of section 1385. That subdivision states that a criminal conviction or "*juvenile adjudication*[ ] that trigger[s] the enhancement or enhancements applied in the current case" is a mitigating circumstance. (§ 1385, subd. (c)(2)(G), italics added.) Because it does not appear that a juvenile adjudication triggers any enhancement (see generally *Olay*, *supra*, 98 Cal.App.5th at p. 66), O'Bannon argues

7

that the subdivision is ambiguous.  He therefore posits that because a juvenile adjudication can be a strike under the Three Strikes law, the term "enhancement" in section 1385, subdivision (c), includes prior strikes.  *Olay*, at pages 66 to 67, acknowledged the potential ambiguity but nonetheless agreed with *Burke*'s ultimate conclusion.  The court expressed skepticism that the Legislature would have rejected the well-established legal meaning of "enhancement" in "a roundabout manner by obliquely referencing 'juvenile adjudications' as one of the relevant mitigating circumstances. . . .  If the Legislature had wanted section 1385, subdivision (c) to apply to prior strikes as well as to enhancements as legally defined, it would have said so."  (*Olay*, at p. 67.)

Senate Bill No. 81's legislative history also "confirms the Legislature had no such intent."  (*Olay*, *supra*, 98 Cal.App.5th at p. 67.)  A June 2021 bill analysis "distinguished an 'enhancement' from an 'alternative penalty scheme' like the Three Strikes law" and stated that " '[t]he presumption created by this bill applies to enhancements [ ] *but does not encompass alternative penalty schemes*.'  (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 81, *supra*, as amended Apr. 27, 2021, at p. 6, italics added.)"  (*Olay*, at p. 67.)

We agree with *Burke* and *Olay*, that an alternative penalty scheme such as the Three Strikes law is not an enhancement within the meaning of section 1385, subdivision (c).  Had the Legislature intended to depart from the clear and longstanding case law that an enhancement is different from an alternative sentencing scheme, it would have said so.  O'Bannon's trial counsel therefore did not provide ineffective assistance by failing

8

to argue that O'Bannon had multiple enhancements within the meaning of section 1385, subdivision (c)(2)(B).

C.   *Enhancement based on conviction over five years old*

O'Bannon contends his counsel rendered ineffective assistance by failing to argue that the mitigating circumstance in section 1385, subdivision (c)(2)(H), for an enhancement "based on a prior conviction that is over five years old" applied to him.  He argues that his November 23, 2015 prior conviction was over five years old when he was *resentenced* on the current offenses in December 2022.  The People counter that the prior conviction was just three years old when he *committed* the current offenses on January 30, 2019.  The parties therefore disagree about the statute's meaning, whether the relevant timeframe runs from the date of the prior conviction to either the date of sentencing on the current offenses or when the defendant committed them.  Employing the usual rules of statutory interpretation, we agree with the People.

In interpreting a statute, we must ascertain the Legislature's intent so as to effectuate the law's purpose.  (*1550 Laurel Owner's Assn., Inc. v. Appellate Division of Superior Court* (2018) 28 Cal.App.5th 1146, 1151.)  To determine that intent, we first examine the statute's words, giving them their ordinary, commonsense meaning and viewing them in their statutory context.  (*Ibid.*)  If the meaning is not clear, we may resort to extrinsic sources, including legislative history.  (*People v. Coronado* (1995) 12 Cal.4th 145, 151.)  "Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute."  (*Allen v. Sully-Miller*

*Contracting Co.* (2002) 28 Cal.4th 222, 227.)  We reject any interpretation that would lead to absurd consequences.  (*Ibid.*)

Here, we interpret the meaning of "a prior conviction that is over five years old."  (§ 1385, subd. (c)(2)(H).)  Stated otherwise, how is the age of a prior conviction calculated?  The face of the statute does not answer this question.  The five years could be determined by, for example, (1) the date the defendant *committed* the current offense, (2) the date the defendant is *convicted* of the current offense, or (3) the date the defendant is *sentenced or resentenced* on the current offense.  The statute does not specify which of these dates should be used.

Senate Bill No. 81's legislative history is also silent on the issue.  However, the Committee on the Revision of the Penal Code 2020 Annual Report and Recommendations (the Report), which recommended the amendments to section 1385 that ultimately became Senate Bill No. 81, offers some insight to legislative intent.  (See Sen. Rules Com., Off. of Sen. Floor Analyses, Floor Analysis Sept. 8, 2021, p. 5.)  The Report endorsed dismissing sentencing enhancements that are based on a prior conviction over five years old.  (Report, p. 37.)  The Report stated that its recommendation "builds on existing California Rules of Court that guide judges on what circumstances they should consider in aggravation and mitigation in imposing a felony sentence, such as prior abuse, recency and frequency of prior crimes, and mental or physical condition of the defendant."[4] (*Id.* at p. 41.)

---

[4]  The report was likely referencing California Rules of Court, rule 4.423(b)(1), which states that a mitigating circumstance is where the defendant "has no prior record, or has an insignificant

Although the Report did not expressly state how to calculate a prior conviction's age, it referred to "insights from other jurisdictions." (Report, *supra*, at p. 42.) The Report noted that many states restrict using enhancements based on prior convictions by imposing "cut-off dates or 'wash-out' provisions, after which criminal history no longer counts for purposes of increasing the length of some sentences." (*Ibid.*) The Report referenced 20 states it had reviewed, including ones that base washout periods on the date the defendant commits the new or current offense. (See, e.g., Ariz. Rev. Stat., § 13–105, subds. (22)(b) & (c) [defining "historical prior felony conviction" as certain felonies committed within the five or 10 years "immediately preceding the date of the present offense"]; Fla. Stat., § 775.084, subd. (1)(a) [washout applies if felony for which the defendant is to be sentenced was committed over five years from prior conviction or release from incarceration or supervision]; Mich. Comp. Law Ann., § 777.50 ["prior record variables" "score" excludes convictions preceding "a period of 10 or more years between the discharge date" and the "commission of the next offense resulting in a conviction"]; Minn. Sentencing Guidelines and Commentary (Aug. 1, 2023) pp. 12–13 ["criminal history score" excludes felonies if 15 years elapsed after date of sentence on prior felony and "date of the current offense"] <https://mn.gov/sentencing-guidelines/guidelines/archive.jsp> [as of Oct. 15, 2024], archived at <https://perma.cc/KZ2Y-PQHN>;

_____

record of criminal conduct, considering the recency and frequency of prior crimes." The rule also provides that a mitigating circumstance is where an "enhancement is based on a prior conviction that is over five years old." (*Id.*, 4.423(b)(13).)

Rev. Code of Wash., § 9.94A.525, subd. (2)(b), (c), (d), (f) [excluding certain felonies from "offender score" depending on time offender spent "in the community without committing any crime that subsequently results in a conviction"]; but see Ill. Comp. Stat., § 5/5-5-3.2, subd. (b)(1) [factor to consider when imposing extended term includes where a defendant is convicted of any felony "when such conviction has occurred within 10 years after the previous conviction, excluding time spent in custody"].)

Indeed, California has a washout provision that also relies on when the defendant commits the current offense. Section 667.5, subdivision (a), provides that an additional term under it shall not be imposed "for any prison term served prior to a period of 10 years in which the defendant remained free of both prison custody and the *commission* of an offense that results in a felony conviction." (Italics added.) Section 667.5 and laws from other jurisdictions thus demonstrate that washout periods generally end on the date the defendant commits the current offense.

Calculating a washout period from the date the current offense was committed makes sense and furthers the general purpose of washouts: to encourage defendants to enter into "a crime-free cleansing period of rehabilitation after a defendant has had the opportunity to reflect upon the error of his or her ways." (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813; *In re Preston* (2009) 176 Cal.App.4th 1109, 1115–1116.) Using the date the defendant commits a new offense to calculate a washout period also furthers the specific legislative intent behind Senate Bill No. 81 to improve "fairness in sentencing while retaining a judge's authority to apply an enhancement to protect public safety." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading of Sen. Bill No. 81, as amended Aug. 30, 2021, at p. 5; Assem.

12

Com. on Appropriations, Analysis of Sen. Bill No. 81, as amended July 1, 2021, at p. 2.)  It treats defendants fairly by basing sentencing on the meaningful factor of how long they remain crime free rather than on the meaningless factor of when sentencing occurs.

O'Bannon neither counters with law from any jurisdiction in which the date a defendant is sentenced on the current offense is used to calculate a washout restriction nor does he offer persuasive argument why measuring a prior conviction's age in this manner makes sense.  He instead argues that the statute is unambiguous as to how to measure a prior conviction's age because it uses the present tense:  the prior conviction "*is* over five years old." (§ 1385, subd. (c)(2)(H), italics added.)  In O'Bannon's view, "is" refers to "the present moment," i.e., when the sentencing judge is considering whether to strike or to dismiss the enhancement.  From this, O'Bannon extrapolates that a prior conviction's age must be measured from the date of the prior conviction to the date of sentencing on the current offense.  However, while the Legislature's choice of verb tense can be significant in construing statutes (*People v. Loeun* (1997) 17 Cal.4th 1, 11), O'Bannon imputes more meaning to verb tense than it can bear in this instance.  To be sure, the sentencing judge must determine, at the moment of sentencing, whether a prior conviction "is" five years old.  But the word "is" does not necessarily answer *how* the five years is to be measured.

Citing section 667.5, subdivision (a), O'Bannon suggests that the Legislature's failure to use similar language in section 1385, subdivision (c)(2)(H), evidences its intent not to base a prior conviction's age on the date a defendant committed the current offense.  (See generally *In re Jennings* (2004) 34 Cal.4th 254, 273

13

[where statute, with reference to one subject contains a given provision, omission of such provision from similar statute concerning related subject may show that a different legislative intent existed with reference to different statutes]; *Bernard v. Foley* (2006) 39 Cal.4th 794, 811 [absence of exception within statutory scheme is significant because Legislature knows how to craft exception when it wants to].) We are unpersuaded. No single canon of construction is an infallible guide to correctly interpret a statute, and such canons cannot defeat legislative intent. (*Ferra v. Loews Hollywood Hotel, LLC* (2021) 11 Cal.5th 858, 879.) We therefore decline to read too much into the Legislature's failure to include in section 1385, subdivision (c)(2)(H) language like that in section 667.5, subdivision (a). Where, as here, the face of the statute does not state an element crucial to its implementation, we must interpret the law to give the Legislature's intent effect.

A hypothetical using O'Bannon's interpretation of the statute demonstrates why that interpretation is contrary to legislative intent and ours is consistent with it. Two hypothetical defendants are convicted of their prior offenses on the same day, commit their current offense on the same day, and are initially sentenced on the current offense on the same day. When the defendants are initially sentenced, their prior convictions are not five years old, so neither benefits from section 1385, subdivision (c)(2)(H). Both appeal and both cases are remanded for resentencing. On remand, Defendant One's resentencing hearing occurs quickly, on a date that is still less than five years from his prior conviction; section 1385, subdivision (c)(2)(H) therefore remains inapplicable to Defendant One. However, Defendant Two's resentencing hearing is delayed, so that at the time of the

14

resentencing hearing, Defendant Two's prior conviction is now over five years old; section 1385, subdivision (c)(2)(H), therefore applies to Defendant Two. The same result could occur if the defendants' initial sentencing hearings occur at different times, one more than five years from the prior conviction and the other less than five years from the prior conviction. This hypothetical thus demonstrates how O'Bannon's construction of the law leads to an absurd result. Defendants One and Two are identically situated, except for the happenstance of when their sentencing hearings occurred. Yet, one is eligible for relief and the other is not. But if we instead calculate the age of their prior convictions from the date of the prior convictions to the date the defendants committed their current offenses, then neither is eligible for relief—the identically situated defendants are treated the same.

Our interpretation of the washout provision thus results in fair and consistent sentencing of similarly situated defendants. And while O'Bannon's interpretation of the statute would certainly render more defendants eligible for relief, it incentivizes defendants to delay sentencing rather than rewarding them for remaining crime free for longer periods of time. (See generally *People v. Jones* (1988) 46 Cal.3d 585, 599 [although we resolve true ambiguities in defendant's favor, we will not strain to interpret a penal statute in defendant's favor if we discern a contrary legislative intent].) We therefore find that the mitigating circumstance in section 1385, subdivision (c)(2)(H) is measured from the date of the defendant's prior conviction to when the defendant commits the current offense.

Applying this calculation here, the enhancement was based on O'Bannon's November 23, 2015 prior conviction for criminal threats. He committed his current offenses on January 30, 2019,

only three years after he was convicted of the prior 2015 offense. Because only three years elapsed from the date of his prior conviction to the date of the current offense, section 1385, subdivision (c)(2)(H) does not apply to him. Accordingly, his trial counsel did not provide ineffective assistance by failing to raise that subdivision in the trial court.

II.    Senate Bill No. 567

O'Bannon contends that, under Senate Bill No. 567, the trial court's reliance on his certified rap sheet to find true three aggravating factors violated his Sixth Amendment right to a jury trial.[5] We find that any trial court error was harmless beyond a reasonable doubt, and we therefore reject the contention.

Effective January 1, 2022, Senate Bill No. 567 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 731, § 1.3) amended section 1170 to make the middle term the presumptive term. A trial court may impose the upper term only "when there are circumstances in aggravation of the crime" that justify imposing a term of imprisonment exceeding the middle term, and the defendant has stipulated to the facts underlying those circumstances or those facts have been found true beyond a reasonable doubt at trial by the trier of fact. (§ 1170, subd. (b)(2); see generally *People v. Lopez* (2022) 78 Cal.App.5th 459, 464–465, disapproved on another ground in *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*).) However, the trial court may "consider the defendant's prior convictions" based on certified records of conviction to determine

---

[5]    The People contend that O'Bannon forfeited this issue by failing to object below. Even if forfeited, we reach the issue because it affects O'Bannon's substantial rights. (§ 1259.)

the sentence to impose without submitting the prior convictions to the jury.  (§ 1170, subd. (b)(3).)

*People v. Wiley* (2023) 97 Cal.App.5th 676, review granted March 12, 2024, S283326 (*Wiley*), considered the scope of section 1170, subdivision (b)(3)'s exception for a trial court's consideration of "prior convictions."[6]  Specifically, other than the bare fact a defendant has suffered a prior conviction, does the exception include issues related to prior convictions that can be determined by examining certified records of conviction?  As relevant here, the "related issues" a trial court may consider are whether a defendant's prior convictions are numerous or of increasing seriousness and whether a defendant previously performed poorly on probation.

*Wiley*, *supra*, 97 Cal.App.5th 676, review granted, found that the exception includes such issues.  The court noted that the statute on its face "does not specify the court is limited to finding that a prior conviction occurred; instead, it states the court may 'consider the defendant's prior convictions in determining sentencing.'"  (*Id.* at p. 686.)  Stated otherwise, the exception is broader than being limited to the bare fact the defendant has a prior conviction.  Further, this statutory language accords with Sixth Amendment jurisprudence under which a jury does not have to find true recidivist issues related to a prior conviction.  (*Wiley*, at p. 686.)  That is, aggravating circumstances based on a defendant's criminal history that render the defendant eligible

---

[6]      The issue on review in *Wiley* is:  "Did the sentencing court's consideration of circumstances in aggravation based on certified records of prior convictions, beyond the bare fact of the convictions, violate Penal Code section 1170, subdivision (b)(3) or defendant's Sixth Amendment right to a jury trial?"

17

for the upper term and that do not need to be submitted to a jury under the Sixth Amendment include: (1) the defendant suffered prior convictions that are numerous or increasingly serious (*People v. Black* (2007) 41 Cal.4th 799, 818–820) and (2) the defendant performed unsatisfactorily while on probation or parole (*People v. Towne* (2008) 44 Cal.4th 63, 82). (See generally *Cunningham v. California* (2007) 549 U.S. 270, 288–289; *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490; *People v. Scott* (2015) 61 Cal.4th 363, 405.) Nothing on the face of section 1170 suggests the Legislature wanted to depart from Sixth Amendment jurisprudence "by establishing a narrower *statutory* prior conviction exception." (*Wiley*, at p. 686; accord, *People v. Morgan* (2024) 103 Cal.App.5th 488, review granted Oct. 2, 2024, S286493; *People v. Pantaleon* (2023) 89 Cal.App.5th 932, 938; *People v. Ross* (2022) 86 Cal.App.5th 1346, 1353, review granted Mar. 15, 2023, S278266 [under § 1170, subd. (b)(3), trial court could rely on certified conviction records to consider recidivism-based aggravating factors, including defendant's multiple offenses, prior prison term, and poor performance on parole and probation];[7] *People v. Flowers* (2022) 81 Cal.App.5th 680, 685–686, review granted Oct. 12, 2022, S276237; but see *People v.*

---

[7]    However, the court concluded that the matter had to be remanded because the *Ross* trial court also relied on crime-based aggravating factors (for example, the victim was particularly vulnerable, and the crime involved great violence, great bodily harm, threat of great bodily harm, or other act disclosing a high degree of cruelty, viciousness, or callousness) that had to be proven to a jury beyond a reasonable doubt or stipulated to by the defendant. (*People v. Ross, supra*, 86 Cal.App.5th at pp. 1355–1356, rev.gr.)

*Falcon* (2023) 92 Cal.App.5th 911, 952, fn. 12, 953–955, review granted Sept. 13, 2023, S281242, [acknowledging § 1170, subd. (b) "now effectively incorporates Sixth Amendment principles," but questioning whether § 1170, subd. (b)(3) has same scope as constitutional exception for prior convictions, and ultimately declining to resolve that question]; see also *People v. Dunn* (2022) 81 Cal.App.5th 394, 404–405 & fn. 8, review granted Oct. 12, 2022, S275655 [certified record of conviction or defendant's admission proved some aggravating factors but not whether defendant was on probation at time of charged offense, so upper term sentence was error, but harmless].)

Our United States Supreme Court recently considered the scope of the prior conviction exception in *Erlinger v. United States* (2024) 602 U.S. ___, 144 S.Ct. 1840.)  In that case, the court rejected that the exception allowed a judge to find whether a defendant committed past offenses on different occasions within the meaning of the federal Armed Career Criminal Act.  (*Id.* at p. __; 144 S.Ct. at pp. 1851–1852.)  The court reiterated that the Sixth Amendment permits a judge to determine no more than what crime with what elements the defendant was convicted of. (*Erlinger*, at p. __; 144 S.Ct. at p. 1854.)

We need not weigh in on whether *Wiley* is correct or what impact *Erlinger* might have on the scope of the exception in section 1170, subdivision (b)(3).  Rather, any error in finding the aggravating circumstances true here was harmless, under the standard of prejudice our California Supreme Court recently articulated in *Lynch, supra*, 16 Cal.5th 730.  *Lynch*, at pages 742 to 743, has now clarified that trial court error in imposing an upper term sentence under section 1170, subdivision (b), is assessed under *Chapman v. California* (1967) 386 U.S. 18.  That

is, where a trial court relies on unproven aggravating factors to impose an upper term sentence, even if some other aggravating factors relied on have been properly established, the "violation is prejudicial unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true *all* of the aggravating facts relied upon by the trial court to justify an upper term sentence, or that those facts were otherwise proved true in compliance with the current statutory requirements." (*Lynch*, at p. 768, italics added.) "If the reviewing court cannot so determine, applying the *Chapman* standard of review, the defendant is entitled to a remand for resentencing."[8] (*Ibid.*)

Applying this standard here, beyond a reasonable doubt, a jury would have found all three aggravating circumstances true based on O'Bannon's extensive criminal history as shown by the certified record of convictions. The trial court accurately summarized that history, noting that O'Bannon's first criminal conviction was in 1997 for misdemeanor being under the influence of a controlled substance (Health & Saf. Code, § 11550). That same year, he was convicted of misdemeanor carrying a concealed weapon (former § 12025, subd. (a)(2)) and felony possession of a controlled substance (Health & Saf. Code, § 11350). In 1998, he was convicted of battery on a peace officer (§§ 242, 243, subd. (b)) and of felony battery by a prisoner (§ 4501.5) for which he was sentenced to probation, and when

---

[8] *Lynch, supra*, 16 Cal. 5th at page 768, accordingly disapproved, to the extent they are inconsistent with its opinion, *People v. Falcon, supra*, 92 Cal.App.5th 911, rev.gr.; *People v. Ross, supra*, 86 Cal.App.5th 1346, rev.gr.; *People v. Dunn, supra*, 81 Cal.App.5th 394, rev.gr.; and *People v. Lopez, supra*, 78 Cal.App.5th 459.

probation was revoked, to four years in prison. In 2002, he was convicted again of felony possession of a controlled substance. In 2003, he was convicted of felony battery against a peace officer (§ 243, subd. (c)(2)) and sentenced to two years in prison and of felony possession of a controlled substance for which he was sentenced to a concurrent term. Following his release from custody, O'Bannon violated parole twice, with an additional violation in 2006. Also in 2006 and then in 2011, he was convicted of misdemeanor obstructing or resisting a public officer (§ 148). In 2008, he was sentenced to four years in prison for assault by a prisoner (§ 4501) and to two years in prison for manufacturing a weapon in prison (former § 12020). Between 2008 and 2014, he violated parole multiple times and, as the trial court noted, "he had been in and out of state prison custody based on" those violations. In 2015, he was convicted of his strike offense, criminal threats, and sentenced to five years in prison. He then committed the at-issue offenses.

This record establishes that O'Bannon has served multiple prior prison terms (Cal. Rules of Court, rule 4.421(b)(3)). O'Bannon does not appear to contest that the trial court could make this finding based on his certified record of convictions. In any event, the mere fact that he suffered a prior conviction complies with the Sixth Amendment as interpreted by *Apprendi* and its progeny.

O'Bannon's certified record of conviction also establishes that he had prior adult convictions that were numerous or of increasing seriousness. (Cal. Rules of Court, rule 4.421(b)(2).) As the trial court detailed, O'Bannon had his first adult conviction in 1997 and continued to accumulate convictions every year or every

several years, often for substance-related crimes or for more serious crimes against a person.

Finally, the certified record of conviction establishes that O'Bannon previously performed poorly on probation (Cal. Rules of Court, rule 4.421(b)(5)). As the trial court noted, O'Bannon violated the terms of his probation or parole many times.

We accordingly conclude that beyond a reasonable doubt a jury would have found all three aggravating circumstances true.

## DISPOSITION

The judgment is affirmed.
**CERTIFIED FOR PARTIAL PUBLICATION**

EDMON, P. J.

We concur:

EGERTON, J.

BERSHON, J.*

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.